# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOHN BERNAL,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. 1:09-cv-01715-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Anthony John Bernal seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court affirms the Commissioner's determination.

## I.   Administrative Record

### A.   Procedural History

On May 21, 2007, Plaintiff filed an application under Title II for a period of disability and disability insurance benefits beginning April 13, 2007. The claims were initially denied on June

29, 2007, and upon reconsideration on November 9, 2007. Plaintiff requested a hearing on November 28, 2007.

Plaintiff appeared and testified at a hearing on May 21, 2008. In a decision dated September 17, 2008, Administrative Law Judge Laura Speck Havens denied Plaintiff's application. On July 31, 2009, the Appeals Council affirmed the ALJ's decision. On September 29, 2009, Plaintiff filed his complaint in this Court.

### B. Factual Record

Plaintiff (born February 18, 1971) completed eleven years of school. From August 1992 to July 2001, he worked in a candy factory, driving a forklift, performing cleaning and maintenance, and running various production lines. Thereafter, he worked intermittently as a laborer and forklift driver, with periods of unemployment. He is right-arm dominant.

On April 13, 2007, the alleged date of onset, Plaintiff was seriously injured in an accident in which the pick-up truck in which he was riding left the road and struck a barbed wire fence. Plaintiff incurred injuries to his head and to his right arm, shoulder, and chest, including a concussion, lacerations to his right arm and head, a broken vertebra, multiple broken ribs, broken collarbone and scapula, and broken humerus (upper arm bone). Most severe was a brachial plexus injury which left Plaintiff's right arm paralyzed and with limited feeling. Nearly all of his medical records reflect his initial emergency treatment and resulting seven-day hospital stay. Plaintiff has not worked since the accident.

Plaintiff received follow-up treatment from doctors at the Stanislaus County Health Services Agency on seven occasions between May 1 and July 24, 2007.

On June 28, 2007, medical consultant J.V. Glaser completed a case analysis and physical residual functional capacity assessment for the agency. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours in an eight-hour work day; had limited ability to push and pull in the upper extremities; should never balance; had limited manipulative ability in his right arm, but unlimited ability in his left arm; and had no visual, communicative or environmental limitations. Noting that Plaintiff was still

///

recovering from his accident, Glaser projected that Plaintiff's residual functional capacity would be for sedentary work.

On August 1, 2007, Plaintiff went to Emmanuel Medical Center in Turlock, California, complaining of back and arm pain. Emergency room personnel treated him with Dilaudid and phenergen.

On August 24, 2007, Plaintiff went to the emergency room of Doctors Medical Center in Modesto, California, complaining of pain. He told emergency room personnel that he had been unable to see his physician to secure a refill of his Vicodin prescription. Hospital notes report that he was in no apparent distress and chatting with his girlfriend while waiting. Dr. Barandica prescribed twenty-five Vicodin, but advised Plaintiff that he would need to secure further prescriptions from his personal physician.

On September 11, 2007, Plaintiff was examined by neurologist Nicholas M. Barbaro, M.D., at the University of California San Francisco Medical Center. Barbaro referred Plaintiff for an orthopedic evaluation before he conducted further electrodiagnostic studies. He prescribed nortriptyline for Plaintiff's continuing severe pain.

On November 6, 2007, Ian Ocrant, M.D. performed a case analysis and physical residual functional capacity assessment for the agency. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours in an eight-hour work day; had limited ability to push and pull in the upper extremities; should never balance or crawl; had no manipulative ability in his right arm, and limited ability in his left arm; and had no visual, communicative or environmental limitations. Ocrant stated that Plaintiff was capable of light work with no use of his right upper extremity.

**II.     Discussion**

    **A.     Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental

impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

| | | |
|---|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

ALJ Havens found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 13, 2007. His only severe impairment was that of his right arm and shoulder. The ALJ concluded that Plaintiff's impairment did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff was unable to perform his past work as a laborer, fork lift operator, or industrial cleaner. He had the residual functional capacity to perform light work except that he is unable to lift, carry, push, pull, reach, handle, finger, or feel with his dominant right upper extremity. Significant numbers of jobs that Plaintiff can perform are available in the national economy.

///

///

### B. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### C. Step Three: Did Plaintiff Meet Listing 11.14?

Plaintiff contends that the ALJ erred in failing to conclude that Plaintiff's impairment satisfied Listing 11.14 (Peripheral Neuropathies). The Commissioner responds that the listing requires that a claimant experience the neuropathy in two extremities, not a single extremity as is the case for Plaintiff. Listing 11.14 addresses peripheral neuropathies "[w]ith disorganization of motor function as described in 11.04B; in spite of prescribed treatment." Listing 11.04B requires "significant and persistent disorganization of motor function in **two extremities**." (Emphasis added.) The ALJ did not err at Step Three.

### D. Plaintiff's Credibility

The ALJ supported her conclusion that Plaintiff's testimony regarding the nature and extent of his symptoms and limitations was not fully credible by noting Plaintiff's infrequent trips to the doctor, his daily activities, and Plaintiff's engaging in part-time work as a home care attendant following his accident. Explaining that the nature and frequency of his treatment is

determined by the Stanislaus County Health Services Agency which must approve any medical care that he receives, Plaintiff protests the finding that his testimony was not credible.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

///

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

Contrasting Plaintiff's testimony with evidence of his daily activities and the frequency of his medical treatment, the ALJ appropriately considered inconsistencies between testimony and other evidence. The record supported her conclusions. Although Plaintiff contended that he was completely disabled by the loss of a functional right arm and associated pain, he testified that he could dress and bathe himself, needing help only to fasten his belt buckle; that he had mastered the art of putting on his own socks; that he could do household chores such as wiping, vacuuming and laundry, although folding laundry was difficult; and that he could shop for groceries. Although his right arm was "dead, 100 percent," he was otherwise "strong as an ox." In sum, the ALJ appropriately determined that Plaintiff's testimony was not fully credible.

The ALJ clearly erred in finding that Plaintiff had worked providing home care since his accident. The evidence presented was that Plaintiff's girlfriend was a part-time home care provider. Nonetheless, the error was undoubtedly harmless in light of the other factors supporting the ALJ's conclusion.

///

///

### E. Gentry's Testimony

Plaintiff contends that the ALJ erred in discounting the testimony of his girlfriend, Diane Gentry because she had a "vested interest in the outcome of this matter." The ALJ clearly erred. "Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless he ultimately determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), *quoting Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Friends and family members who are in a position to observe the claimant's symptoms and daily activities are competent to testify about their observations of the claimant's condition. *Dodrill*, 12 F.3d at 918-19. An ALJ's disregard of the testimony of friends and family members violates the regulations, which provide for consideration of the observations of non-medical sources regarding the effects of the claimant's impairments on his ability to work. *Id., citing* 20 C.F.R. § 404.1513(e)(2).[1] *See also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). When a claimant alleges symptoms that are not supported by medical evidence in the record, the agency directs the adjudicator to obtain information about those symptoms from third parties likely to have such knowledge. SSR 88-13. The ALJ must give "full consideration" to such testimony. Id.

Nonetheless, the ALJ disregard of Gentry's very minimal testimony was harmless. In addition to basic background information about herself, Gentry's brief and general testimony, recounted on less than two full pages of the transcript, revealed only that Gentry was employed part time, which allowed her to spend time helping Plaintiff, and that she helped him to bathe, dress, and cook.

### F. Vocational Expert Testimony

Plaintiff's contention that the ALJ erred in relying on the vocational expert's testimony depends on the Court's accepting his contentions that the ALJ wrongly found Plaintiff's and Gentry's testimony to be less than fully credible. Since the Court affirms the ALJ's determination, if need not reach Plaintiff's contention that the ALJ should have relied on the

---

[1] The relevant section is now designated 20 C.F.R. § 1513 (d)(4).

vocational expert's response to the hypothetical question that used the very minimal residual functional capacity asserted by Plaintiff and Gentry.

Based on his personal assessment of the capability of an individual who has lost the use of one arm, Plaintiff also claims that the vocational expert erred in not articulating that the jobs he identified that Plaintiff could perform required the use of two arms. Because the vocational expert reduced the number of available jobs to account for those that could not be performed by an individual having the use of only one arm, the ALJ did not err in accepting the vocational expert's testimony.

### III.  Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:   July 9, 2011**                                /s/ Sandra M. Snyder
                                                                   UNITED STATES MAGISTRATE JUDGE